# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM J. MENTING,

                       Plaintiff,

v.

BRIAN R. SCHMIDT,

                       Defendant.

Case No. 16-CV-1540-JPS

**ORDER**

### 1. INTRODUCTION

Plaintiff William J. Menting ("Menting"), a prisoner, brought this action against defendant Brian R. Schmidt ("Schmidt"), alleging that he was deliberately indifferent to Menting's serious medical conditions, in violation of the Eighth Amendment. Specifically, Menting alleged that beginning around mid-2013, while he was incarcerated at Kettle Moraine Correctional Institution, Schmidt denied Menting a wheelchair (the "wheelchair claim") and prevented Menting's meals from being delivered to him in his cell (the "meal-delivery claim"). (Docket #1 at 4–6 and #1-6). Menting alleged that both of these things were done in contravention of a physician's order. *Id.*

Schmidt filed a motion for partial summary judgment as to Menting's meal-delivery claim on the ground that Menting did not properly exhaust his administrative remedies as to that claim. (Docket #23). The Court granted that motion and dismissed Menting's meal-delivery claim from this lawsuit. (Docket #43). The Court then set a new dispositive motion deadline for Menting's remaining wheelchair claim. *Id.* at 5.

Now pending before the Court is Schmidt's motion for summary judgment as to Menting's wheelchair claim. (Docket #44). Menting did not file a response to Schmidt's motion for summary judgment, and his time to do so has long since passed. The Court could summarily grant Schmidt's motion in light of Menting's non-opposition. Civ. L. R. 7(d). However, as explained below, Schmidt also presents a valid basis for dismissing Menting's claim on its merits. For that reason, Schmidt's motion must be granted.[1]

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides the mechanism for seeking summary judgment. Rule 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that

---

[1] After Menting failed to file an opposition to Schmidt's motion for summary judgment, Schmidt filed a motion asking the Court to dismiss this lawsuit for failure to prosecute. (Docket #49). As explained above, the local rules allow for dismissal on that ground, but because Schmidt is entitled to dismissal on the merits of Menting's claim against him, the Court will grant Schmidt's motion for summary judgment and deny as moot his motion to dismiss for failure to prosecute.

"we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

3.   **BACKGROUND**

   **3.1   Menting's Failure to Dispute Schmidt's Proposed Facts**

The relevant facts are undisputed because Menting failed to dispute them. In the Court's scheduling order, entered February 3, 2017, Menting was warned about the requirements for opposing a motion for summary judgment. (Docket #18 at 2–3). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission. In Schmidt's motion for summary judgment, he too warned Menting about the requirements for his response as set forth in Federal and Local Rules 56. (Docket #44). Plaintiff was provided with additional copies of those Rules along with Defendant's motion. *Id.* at 3–12. In connection with his motion, Schmidt filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #46). It contained short, numbered paragraphs concisely stating those facts which Schmidt proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

In response, Menting filed absolutely nothing—no brief in opposition, much less a response to the statement of facts.[2] Despite being

---

[2] Menting's only filing since the date of Schmidt's motion was a letter asking this Court for advice regarding the procedure for an appeal. (Docket #50). That letter is not responsive to Schmidt's summary judgment motion. Further, Menting's inquiry about an appeal is premature, as his case had not yet terminated with a final appealable order at the time he filed his letter seeking instruction regarding an appeal.

twice warned of the strictures of summary judgment procedure, Menting ignored those rules by failing to properly dispute Schmidt's proffered facts with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Thus, the Court will, unless otherwise stated, deem Schmidt's proposed facts undisputed for purposes of deciding his motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

### 3.2 Relevant Facts

Menting lost part of his left leg as a result of a motorcycle accident in 2010, prior to his incarceration at Kettle Moraine Correctional Institution ("KMCI").[3] As a result, he has a stump left leg and a prosthesis that he uses to walk. Upon his arrival at KMCI in May 2014, Menting was assessed by the prison's Health Services Unit ("HSU") medical staff. He was given medical restrictions for a low bunk, first floor accommodations, and light activity, but he was not deemed to require a wheelchair. Inmates at KMCI are allowed to have a wheelchair only if HSU has approved such use based on a determination that it is medically necessary.

Over the course of his stay at KMCI, from May 2014 to July 2015, Menting was seen and treated by medical staff for various issues related to his stump leg. In October 2014, a doctor at the prison entered an order

---

[3]All factual discussion is drawn from Schmidt's statement of proposed facts. (Docket #46).

allowing Menting to have either crutches or a walker, but not a wheelchair. In the doctor's medical opinion, it was not appropriate for Menting to use a wheelchair because immobility inhibits circulation, and either crutches or a walker were better options to enhance Menting's circulation and keep weight off his stump. Menting refused to use the crutches that the doctor ordered.

At all times relevant, Schmidt was a correctional sergeant at KMCI. Schmidt does not recall Menting ever telling him that he needed a wheelchair. Schmidt also did not receive any written correspondence from Menting wherein Menting asked for a wheelchair. Schmidt states that even if Menting did ask him for a wheelchair, he could not have given one to him, because Menting did not have wheelchair restriction documentation from HSU at any time during his stay at KMCI. Instead, Schmidt states that if Menting asked him for a wheelchair, Schmidt would have advised Menting to contact HSU.

4. ANALYSIS

Menting alleges that he told Schmidt he needed a wheelchair and Schmidt refused to give him one in violation of Menting's constitutional rights. *See* (Docket #1 at 3–4, 10). Menting's allegations implicate his Eighth Amendment right to adequate medical care. Prison officials violate that right if they exhibit deliberate indifference to an inmate's serious medical needs. *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 422 (7th Cir. 2017). To show deliberate indifference, a plaintiff must prove that "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

With regard to the deliberate indifference prong, the plaintiff must show that the defendant acted with the requisite culpable state of mind. *Id.* This entails a showing that the defendant had "subjective knowledge of the risk to the inmate's health" and the defendant "disregard[ed] that risk." *Id.* In other words, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*

The undisputed facts demonstrate that Schmidt was not deliberately indifferent to Menting's medical need. Schmidt has testified that he does not recall Menting ever telling him that he needed a wheelchair to accommodate his stump leg, (Docket #47 at 5), and Menting has put forth no evidence that Schmidt was aware that Menting needed a wheelchair. Schmidt says that he knew Menting had a prosthetic leg, but based on his observations, Menting was able to move around the unit without issue. *Id.*

Further, the medical staff at KMCI did not put a wheelchair restriction in Menting's file, indicating to correctional staff, including Schmidt, that a wheelchair was not deemed medically necessary for Menting. As a nonmedical prison employee, Schmidt was entitled to defer to the judgment of prison medical professionals so long as he did not ignore Menting. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). There is no evidence that Schmidt ignored Menting's plight.

Accordingly, Menting cannot show that Schmidt had "subjective knowledge of the risk to [Menting's] health." *Gayton*, 593 F.3d at 620.

Because this element of Menting's claim is indisputably disproven, Schmidt is entitled to judgment in his favor.[4]

**5. CONCLUSION**

On the undisputed facts presented, summary judgment is appropriate in Schmidt's favor on Menting's wheelchair claim. The Court must, therefore, grant Schmidt's motion for summary judgment and dismiss this action.

Accordingly,

**IT IS ORDERED** that Schmidt's motion for summary judgment as to Menting's Eighth Amendment claim regarding wheelchair use (Docket #44) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Menting's Eighth Amendment claim regarding wheelchair use (Docket #8 at 4, 9) be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Schmidt's motion to dismiss for failure to prosecute (Docket #49) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

---

[4] Schmidt also argues that Menting did not have a serious medical condition because KMCI medical staff determined that Menting did not require a wheelchair to accommodate his stump leg. (Docket #45 at 68). In light of Menting's failure to create a jury question on the deliberate indifference element of his claim, the Court need not analyze Schmidt's argument as to the seriousness of Menting's medical condition.

Dated at Milwaukee, Wisconsin, this 14th day of June, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge